# IN THE DISTRICT COURT OF THE UNITED STATES

## For the Western District of New York

November 2012 Grand Jury
(Impaneled 11/9/2012)

THE UNITED STATES OF AMERICA

-vs-

**JAMES MAZZARIELLO, JR.**
(Counts 1-5),
**ADAM MAZZARIELLO**
(Count 1), and
**CHRISTOPHER MAHONEY**
(Count 1)

SUPERSEDING
INDICTMENT

**13-CR-211-A**

**Violations:**
Title 18, United States Code,
Section 371;
Title 26, United States Code,
Section 7206(1)
 (5 Counts)

### INTRODUCTION

**The Grand Jury Charges That:**

During the time period relevant to this Indictment:

1.      The City of Buffalo was a municipal corporation located in the State of New York.

2.      The City of Buffalo received benefits in excess of $10,000 under Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance, and other forms of Federal assistance in any one year period.

3.      The defendant, JAMES MAZZARIELLO, JR., was the owner and operator of Jim Mazz. Automotive Inc. ("Jim Mazz Auto"), a business located at 1255 Bailey Avenue, Buffalo, New York, and the owner and operator of National Towing and Storage, Inc. ("National Towing"), a business located at 1267 Bailey Avenue, Buffalo, New York.

4.      The defendant, ADAM MAZZARIELLO, son of defendant JAMES MAZZARIELLO, JR., was employed by Jim Mazz Auto, and generally acted as a supervisor responsible for the towing service aspect of the Jim Mazz Auto and National Towing businesses.

5.      The defendant, CHRISTOPHER MAHONEY, was employed in a managerial capacity at Jim Mazz Auto and acted in a managerial capacity at National Towing.

6.      Jim Mazz Auto was involved in all aspects of the automobile towing and repair business.  Jim Mazz Auto operated as a collision repair shop and as a mechanical repair shop, provided towing services, and sold used automobiles.

7.      National Towing provided automobile towing services and operated as a vehicle storage facility.   The tow truck operators employed by Jim Mazz Auto also performed towing services for National Towing.  Whether performing towing services for Jim Mazz Auto or National Towing, such tow truck operators will be, hereinafter, collectively referred to as "Jim Mazz Auto tow truck operators."

8.      Towing and storing impounded motor vehicles from private parking lots located in the City of Buffalo generated substantial revenue and income for Jim Mazz Auto and National Towing.  Owners of impounded motor vehicles were required to pay, in cash, towing and storage fees to Jim Mazz Auto in order to obtain a return of impounded motor vehicles.

9.      Jim Mazz Auto maintained a ready source and supply of cash on hand from fees generated from towing and storing impounded motor vehicles.

10.      Towing and storing disabled and damaged motor vehicles following motor vehicle accidents in the City of Buffalo generated substantial revenue and income for Jim Mazz Auto and National Towing.  Further, performing the collision and mechanical repair work for such disabled and damaged vehicles was a source of substantial revenue and income for Jim Mazz Auto.

11.      Jim Mazz Auto tow truck operators worked, in part, on a commission basis. Towing impounded motor vehicles, and towing disabled and damaged vehicles from motor vehicle accident scenes in the City of Buffalo generated income for the tow truck operators.

12.      Tow truck operators employed by private tow truck companies, including Jim Mazz Auto, sought to be the first tow truck to reach motor vehicle accident scenes as oftentimes, the first tow truck to arrive at an accident location obtained the towing business. A tow truck company that obtained a tow from an accident scene had the opportunity to

derive substantial income from fees which included, but were not limited to, the following:

fees for towing services, fees for clean-up services, fees for fuel surcharges, fees for mileage,

storage fees, and collision and mechanical repair fees.

13.     City of Buffalo police officers had the duty and responsibility to respond to

motor vehicle accidents that occurred within the City of Buffalo.

14.     The City of Buffalo Police Department formalized its policies and procedures

in a document entitled, "City of Buffalo Police Department Manual of Procedures"

(hereinafter "Manual of Procedures").  The Manual of Procedures, which was in effect at all

times relevant, was periodically updated as circumstances dictated.   The Manual of

Procedures in effect between in or about August 2006 and August 23, 2011, specifically

addressed issues involving vehicle towing and storage from motor vehicle accident scenes.

The Manual of Procedures in effect between in or about August 2006 and August 23, 2011,

provided in pertinent part:

> 6.6     CITY TOW TRUCK
> The City tow truck is operated by the Parking Violations Bureau
> (PVB).  Members of the Police Department requiring the use of a tow truck
> for an official function shall contact the City tow truck through the Police
> Radio Dispatcher.
>
> * * *
>
> 6.21    PRIVATE TOW TRUCKS
> A.      Prohibition on Calling
> Employees of this Department shall not recommend nor summon any
> private tow truck, or take any action that would directly or indirectly connect
> this Department with the services of any privately owned tow truck …
>
> * * *

-4-

D.    Unrequested appearance on the scene
Under circumstances in which a tow truck appears at the scene of an incident, and the tow truck has not been summoned by the owner or operator of any of the vehicles, officers shall advise the owner or operator that (s)he is free to select the service of his/her choice and that (s)he is not obligated or mandated, to accept the unrequested service.

E.    Rendering Assistance
When the operator or owner of a damaged vehicle is present and able to arrange for towing, (s)he shall be allowed to arrange for the towing service of his/her choice.

15.    The Manual of Procedures, effective August 23, 2011, did not substantively change the provisions concerning the towing and storage of vehicles.

16.    In responding to motor vehicle accident scenes, and contrary to the policy of the City of Buffalo Police Department, certain City of Buffalo police officers, known and unknown to the Grand Jury, including a police officer referred to hereinafter as Officer 1, a person known to the Grand Jury, authorized and designated tow truck operators to tow disabled and damaged motor vehicles from the accident scenes.

17.    Certain City of Buffalo Police Department police officers, known and unknown to the Grand Jury, including Officer 1, violated the policy of the Police Department regarding the towing of disabled and damaged motor vehicles, and in exchange for expected payments from Jim Mazz Auto tow truck operators, directed and authorized the towing of disabled and damaged motor vehicles from accident scenes by Jim Mazz Auto tow truck operators.

18.     In about May of 2012, following the homicide of a tow truck operator who worked in the City of Buffalo, certain police officers who violated the policy of the City of Buffalo Police Department regarding the towing of disabled and damaged motor vehicles, began to adhere to the policy.

## COUNT 1
### (Conspiracy to Pay Bribes and Gratuities)

**The Grand Jury Further Charges That:**

**A. OBJECT OF THE CONSPIRACY**

1.      The allegations of the Introduction to this Superseding Indictment are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.      Between in or August 2006 and in or about May 2012, the exact dates being unknown to the Grand Jury, in the Western District of New York, the defendants, JAMES MAZZARIELLO, JR., ADAM MAZZARIELLO, and CHRISTOPHER MAHONEY, did knowingly, willfully and unlawfully combine, conspire and agree together with Officer 1, and with others, known and unknown to the Grand Jury, to commit an offense against the United States, that is, to corruptly give, offer, and agree to give anything of value to persons, that is, employees of the City of Buffalo Police Department, including police officers, with the intent to influence and reward an agent of a local government, that is, the City of Buffalo which received in any one year period benefits in excess of $10,000 under Federal programs, in connection with any business, transaction, and series of transactions of such government involving anything of value of $5,000 or more, in violation of Title 18, United States Code, Section 666(a)(2).

B.    **MANNER AND MEANS OF THE CONSPIRACY**

3.    It was part of the conspiracy that certain City of Buffalo police officers, known and unknown to the Grand Jury, including Officer 1, responded to numerous motor vehicle accidents within the City of Buffalo. These officers assumed authority and control over the motor vehicle accident scenes and determined which tow truck company could remove disabled and damaged motor vehicles from the accident scenes.

4.    In order to induce certain City of Buffalo police officers to select Jim Mazz Auto and National Towing as the tow truck companies authorized to remove disabled and damaged motor vehicles from motor vehicle accident scenes, as well as to thereafter reward police officers for having selected Jim Mazz Auto and National Towing, defendants, JAMES MAZZARIELLO, JR., ADAM MAZZARIELLO, and CHRISTOPHER MAHONEY, authorized and caused Jim Mazz Auto tow truck operators to make cash payments to certain City of Buffalo police officers, including Officer 1.

5.    In exchange for such expected cash payments, certain City of Buffalo police officers, including Officer 1, violated the policy of the City of Buffalo Police Department by failing to contact the City of Buffalo tow truck through the police radio dispatcher when use of a tow truck was required; by directly summoning private tow truck service providers; by recommending private tow truck service providers to the victims of motor vehicle accidents; by failing to advise the victims of motor vehicle accidents that they were free to select the tow truck service provider of their choice; by failing to advise the victims of motor vehicle accidents that they were not obligated to accept the towing services of any providers who

simply arrived at the scene; and by failing to advise the victims of motor vehicle accidents that they were entitled to arrange for the towing service of their choice.

## C. OVERT ACTS

6.     In furtherance of the conspiracy, and to affect the objects of the conspiracy, the following acts, among others, were committed by the defendants and others in the Western District of New York, and elsewhere:

a.     In or about August 2006, the exact date being unknown to the Grand Jury, defendant, ADAM MAZZARIELLO, offered a City of Buffalo Police Officer free or discounted automobile mechanical work for providing ADAM MAZZARIELLO with early notification of the occurrence of motor vehicle accidents in the City of Buffalo.

b.     Between in or about March 2008 and in or about August 2009, the exact date being unknown to the Grand Jury, defendant, ADAM MAZZARIELLO, offered a City of Buffalo Police Radio Dispatcher a sum of money for each instance when the City of Buffalo Police Radio Dispatcher provided ADAM MAZZARIELLO with early notification of the occurrence of a motor vehicle accident in the City of Buffalo.

c.     Between in or about January 2009 and in or about May 2012, the exact dates being unknown to the Grand Jury, defendant, JAMES MAZZARIELLO, JR., instructed Jim Mazz Auto tow truck operators, known and unknown to the Grand Jury, to do whatever was necessary to secure tows of motor vehicles damaged during automobile

accidents in the City of Buffalo and berated tow truck operators when they failed to obtain a tow from a motor vehicle accident.

d.      Between in or about January 2009 and in or about May 2012, the exact dates being unknown to the Grand Jury, defendant, JAMES MAZZARIELLO, JR., made cash payments to certain City of Buffalo police officers, unknown to the Grand Jury.

e.      Between in or about January 2009 and in or about May 2012, the exact dates being unknown to the Grand Jury, defendant, ADAM MAZZARIELLO, made cash payments to certain City of Buffalo police officers, unknown to the Grand Jury.

f.      Between in or about January 2009 and in or about May 2012, the exact dates being unknown to the Grand Jury, defendant, CHRISTOPHER MAHONEY, made cash payments to certain City of Buffalo police officers, unknown to the Grand Jury.

g.      Between in or about January 2009 and in or about May 2012, the exact dates being unknown to the Grand Jury, Jim Mazz tow truck operators made cash payments to certain City of Buffalo police officers, including Officer 1.

h.      Between in or about January 2009 and in or about May 2012, the exact dates being unknown to the Grand Jury, defendant, JAMES MAZZARIELLO, JR., caused Jim Mazz Auto tow truck operators to make cash payments to certain City of Buffalo police officers, including Officer 1.

i.      Between in or about January 2009 and in or about May 2012, the exact dates being unknown to the Grand Jury, defendant, ADAM MAZZARIELLO, caused Jim Mazz Auto tow truck operators to make cash payments to certain City of Buffalo police officers, including Officer 1.

j.      Between in or about January 2009 and in or about May 2012, the exact dates being unknown to the Grand Jury, defendant, CHRISTOPHER MAHONEY, caused Jim Mazz Auto tow truck operators to make cash payments to certain City of Buffalo police officers, including Officer 1.

k.      Between in or about January 2009 and in or about May 2012, the exact dates being unknown to the Grand Jury, Jim Mazz tow truck operators made cash payments to certain City of Buffalo police officers, including Officer 1.

l.      Between in or about January 2009 and in or about May 2012, the exact dates being unknown to the Grand Jury, defendant, JAMES MAZZARIELLO, JR., reimbursed Jim Mazz Auto tow truck operators for cash payments made to certain City of Buffalo police officers, including Officer 1.

m.      Between in or about January 2009 and in or about May 2012, the exact dates being unknown to the Grand Jury, defendant, ADAM MAZZARIELLO, reimbursed Jim Mazz Auto tow truck operators for cash payments made to certain City of Buffalo police officers, including Officer 1.

n.    Between in or about January 2009 and in or about May 2012, the exact dates being unknown to the Grand Jury, defendant, CHRISTOPHER MAHONEY, reimbursed Jim Mazz Auto tow truck operators for cash payments made to certain City of Buffalo police officers, including Officer 1.

o.    Between in or about January 2009 and in or about May 2012, the exact dates being unknown to the Grand Jury, Jim Mazz Auto tow truck operators received notification from certain City of Buffalo police officers, including Officer 1, of the occurrence and location of motor vehicle accidents in the City of Buffalo which provided the tow truck operators the opportunity to arrive at the accident scenes prior to other towing service providers.

p.    Between in or about January 2009 and in or about May 2012, the exact dates being unknown to the Grand Jury, Jim Mazz Auto tow truck operators, after receiving notification of the occurrence and location of an automobile accident from certain City of Buffalo police officers, including Officer 1, relayed such information amongst and between other Jim Mazz Auto tow truck operators in order to ensure that Jim Mazz Auto and National Towing obtained the towing business from the accident.

q.    Between in or about January 2009 and in or about May 2012, the exact dates being unknown to the Grand Jury, Jim Mazz Auto tow truck operators notified certain City of Buffalo police officers, including Officer 1, of the occurrence and location of motor vehicle accidents in the City of Buffalo in order to enlist the assistance of certain

police officers to eliminate the threat of rival tow truck operators from securing towing business at the scene of motor vehicle accidents.

r.      Between in or about January 2009 and in or about May 2012, the exact dates being unknown to the Grand Jury, certain City of Buffalo police officers, including Officer 1, having the perceived authority and ability to do so, prevented other tow truck service providers from towing damaged motor vehicles from motor vehicle accident scenes and ordered other tow truck service providers to leave the scenes of motor vehicle accidents in order that Jim Mazz Auto tow truck operators obtain the towing business.

s.      On or about June 9, 2011, Officer 1 enlisted the assistance of a City of Buffalo police officer, who will hereinafter be referred to as Officer 2, to impede a tow truck operator who was employed by a tow truck company that was a competitor of Jim Mazz Auto and National Towing.  In order to discourage the rival tow truck operator from competing with a Jim Mazz Auto tow truck operator for the tow, Officer 2 issued a traffic ticket to the rival tow truck operator for having tinted windows that exceeded shading limits.

t.      Between in or about January 2009 and in or about May 2012, the exact dates being unknown to the Grand Jury, defendant, ADAM MAZZARIELLO, and Jim Mazz Auto tow truck operators requested reimbursement from defendant, JAMES MAZZARIELLO, JR., for making and causing cash payments to be made to certain City of Buffalo Police officers, including Officer 1.

u.      Between in or about January 2009 and in or about May 2012, the exact dates being unknown to the Grand Jury, defendant, ADAM MAZZARIELLO, and Jim Mazz Auto tow truck operators requested reimbursement from defendant, CHRISTOPHER MAHONEY, for making and causing cash payments to be made to certain City of Buffalo Police officers, including Officer 1.

v.      Between in or about January 2009 and in or about May 2012, the exact dates being unknown to the Grand Jury, Jim Mazz Auto tow truck operators maintained a record of payments made to certain City of Buffalo police officers, including Officer 1, in order to obtain reimbursement from defendants, JAMES MAZZARIELLO, JR., ADAM MAZZARIELLO, and CHRISTOPHER MAHONEY for such payments.

**All in violation of Title 18, United States Code, Section 371.**

## COUNT 2
### (Making and Subscribing a False Return)

**The Grand Jury Further Charges That:**

1.      The allegations contained in paragraphs 3 to 11 of the Introduction to this Superseding Indictment are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about March 17, 2010, in the Western District of New York, JAMES MAZZARIELLO, JR., a resident of Marilla, New York, did willfully make and subscribe a U.S. Income Tax Return for an S Corporation, Form 1120S, for Jim Mazz. Auto Inc. for the calendar year 2009, which was verified by a written declaration that it was made under

the penalties of perjury and was filed with the Internal Revenue Service, and which return the defendant did not believe to be true and correct as to every material matter, in that the return reported gross receipts on Line 1a of $1,916,358, whereas, as the defendant then and there knew and believed, Jim Mazz. Auto Inc. had gross receipts in an amount which was substantially greater than the amount reported on the return.

**All in violation of Title 26, United States Code, Section 7206(1).**

## COUNT 3
### (Making and Subscribing a False Return)

**The Grand Jury Further Charges That:**

1.      The allegations contained in paragraphs 3 to 11 of the Introduction to this Superseding Indictment are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about July 1, 2011, in the Western District of New York, JAMES MAZZARIELLO, JR., a resident of Marilla, New York, did willfully make and subscribe a U.S. Income Tax Return for an S Corporation, Form 1120S, for Jim Mazz. Auto Inc. for the calendar year 2010, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, and which return the defendant did not believe to be true and correct as to every material matter, in that the return reported gross receipts or sales on Line 1a of $1,625,573 whereas, as the defendant then and there knew and believed, Jim Mazz. Auto Inc. had gross receipts in an amount which was substantially greater than the amount reported on the return.

**All in violation of Title 26, United States Code, Section 7206(1).**

## COUNT 4
**(Making and Subscribing a False Return)**

**The Grand Jury Further Charges That:**

1.       The allegations contained in paragraphs 3 to 11 of the Introduction to this Superseding Indictment are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.       On or about May 4, 2010, in the Western District of New York, JAMES MAZZARIELLO, JR., a resident of Marilla, New York, did willfully make and subscribe a U.S. Income Tax Return, Form 1040, for the calendar year 2009, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, and which return the defendant did not believe to be true and correct as to every material matter, in that the return reported supplemental income and loss on Line 17 of $9,454, whereas, as the defendant then and there knew and believed, he had supplemental income in an amount which was substantially greater than the amount reported on the return.

**All in violation of Title 26, United States Code, Section 7206(1).**

## COUNT 5
**(Making and Subscribing a False Return)**

**The Grand Jury Further Charges That:**

1.       The allegations contained in paragraphs 3 to 11 of the Introduction to this Superseding Indictment are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about August 12, 2011, in the Western District of New York, JAMES MAZZARIELLO, JR., a resident of Marilla, New York, did willfully make and subscribe a U.S. Income Tax Return, Form 1040, for the calendar year 2010, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, and which return the defendant did not believe to be true and correct as to every material matter, in that the return reported supplemental income and loss on Line 17 of ($4,711), whereas, as the defendant then and there knew and believed, any loss he sustained, if he sustained any loss at all, was substantially less than the amount reported on the return.

**All in violation of Title 26, United States Code, Section 7206(1).**

**DATED**:   Buffalo, New York,  April 23, 2014.

WILLIAM J. HOCHUL, JR.
United States Attorney


BY:   <u>S/RUSSELL T. IPPOLITO, JR.</u>
RUSSELL T. IPPOLITO, JR.
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5700, ext.  843
russell.ippolito@usdoj.gov


A TRUE BILL:


<u>S/FOREPERSON</u>
FOREPERSON